UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KEVIN INGRAM, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 1:21-cv-02479-TWP-KMB |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**ORDER DENYING MOTION FOR RELIEF PURSUANT TO 28 U.S.C. § 2255 AND DENYING CERTIFICATE OF APPEALABILITY**

This matter is before the Court on Petitioner Kevin Ingram's ("Ingram") Amended Motion for Relief Pursuant to 28 U.S.C. § 2255. (Dkt. 8.) For the reasons explained in this Entry, the Motion is **denied** and the action dismissed with prejudice. In addition, the Court finds that a certificate of appealability should not issue.

## I. THE § 2255 MOTION

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *See Davis v. United States*, 417 U.S. 333, 343 (1974). A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Relief under this statute is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013) (citing *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996); *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997)).

## II. FACTUAL BACKGROUND

Over the course of eight days in October 2017, Ingram committed three robberies and one attempted robbery in Indianapolis, Indiana. On October 2, 2018, Ingram was charged in a Second Superseding Indictment with three counts of Hobbs Act robbery and one count of attempted Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Counts 1-4), and four counts of possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A) (Counts 5-8). *United States v. Ingram*, 1:18-cr-44-TWP-TAB-1 (Crim. Dkt. 79). He proceeded to trial and was found guilty on all eight counts (Crim. Dkt. 133). In his direct appeal, the Seventh Circuit summarized the facts presented at trial as follows:

> … the government submitted testimony, video surveillance footage, digital photographs, and other physical and electronic evidence, showing the following: The first robbery—the basis of Counts 1 and 5—took place on October 16. Ingram entered an "Eyes by India" salon and shoved into the store clerk's back what she believed was a gun. Ingram then ordered her to give him all the money in the cash register. After the clerk handed Ingram the cash, he forced her into a breakroom and fled. The clerk did not see, and the security cameras in the store did not capture an image of, the object that Ingram shoved against her back. But the clerk testified that she believed it was a gun because the object felt "hard" and like "metal." The next day, while on an errand with his girlfriend, Vyctorya Cobb, Ingram robbed the DJ Beauty Supply (Counts 2 & 6). Approaching the store clerk at the counter, Ingram suddenly pulled out a gun and demanded money from the register. After receiving about $450, Ingram fled in Cobb's car. While driving away, Cobb noticed Ingram remove a large amount of cash and a small black gun from his hoodie. After Cobb pulled the car over and confronted Ingram about what he had done, Ingram confessed to robbing the store. Three days later, Ingram robbed another Eyes by India salon, threatening both a store clerk and other customers with a gun (Counts 3 & 7). Finally, three days after the second Eyes by India robbery, Ingram ran out of luck when he tried to rob a Dollar Tree (Counts 4 & 8). Despite her terror at Ingram's weapon, the clerk could not open the register and Ingram left empty-handed.

*United States v. Ingram*, 947 F.3d 1021, 1023-24 (7th Cir. 2020).

By statute Ingram is a career offender because of his prior felony convictions for crimes of of violence; his adult criminal history includes three robbery convictions prior to the instant series of robberies. When he was 17 he robbed a woman at gunpoint and stole her purse, money key and

car. When he was 22 he robbed two additional women at separate locations on the same date. At least one of those robberies' involved a firearm. His other adult convictions involve firearms and drug possession. At his sentencing hearing, the Court determined that Ingram's criminal history score was 13 which established a criminal history category VI—and because he is a career offender, the criminal history category would still be VI even if he did not have 13 criminal history points. (Crim. Dkt. 176 at 26).  Ingrams advisory guideline sentence was 546-598 months imprisonment. *Id*. at 27.  The Court sentenced Ingram to a below guideline sentence of 486 months' imprisonment (Crim. Dkt. 170). Specifically, he received 150 months on Counts 1-4, to be served concurrently, and 84 months on each of Counts 5-8, to be served consecutively.  *Id*. The downward variance from the advisory the guideline range was based upon the Ingram's diminished intellectual capacities, his remorse, his drug and alcohol dependence, and the Court's hope and belief that Ingram could be rehabilitated. (Dkt. 176 at 45).

On appeal, Ingram argued that there was insufficient evidence that he brandished a firearm to support his conviction on Count 5, and that his conviction on Count 8 cannot stand because attempted Hobbs Act robbery is not a crime of violence. *United States v. Ingram*, 947 F. 3d. 947, 1024 (7th Cir. 2020).  On  February 20, 2020, the Seventh Circuit affirmed his convictions. *Id*. at 1025-26.  Ingram then filed this § 2255 motion.

### III. DISCUSSION

In support of his § 2255 motion, Ingram argues his trial counsel provided ineffective assistance in several ways.  He argues that trial counsel provided ineffective assistance when he did not: (1) file Ingram's petition to enter a plea agreement due to an alleged conflict of interest, (2) seek a competency hearing, (3) object to consecutive sentences imposed for brandishing a firearm, and (4) object to the alleged inclusion of his prior misdemeanor and dismissed cases in

3

calculating his criminal history score.[1] The Court first addresses the standard it must consider in determining whether Ingram's counsel was ineffective before examining his four claims.

A.   **Legal Standard**

A petitioner claiming ineffective assistance of counsel bears the burden of showing that trial counsel's performance fell below objective standards for reasonably effective representation and that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688–94 (1984); *Resnick v. United States*, 7 F.4th 611, 619 (7th Cir. 2021). If a petitioner cannot establish one of the *Strickland* prongs, the court need not consider the other. *Groves v. United States,* 755 F.3d 588, 591 (7th Cir. 2014). To satisfy the first prong of the *Strickland* test, the petitioner must direct the court to specific acts or omissions of his counsel. *Wyatt v. United States,* 574 F.3d 455, 458 (7th Cir. 2009). The court must then consider whether in light of all of the circumstances counsel's performance was outside the wide range of professionally competent assistance. *Id.* On the prejudice prong, a petitioner "must show that but for counsel's errors, there is a reasonable probability that the result would have been different." *Perrone v. United States*, 889 F.3d 898, 908 (7th Cir. 2018) (cleaned up).

B.   **Petition to Plead Guilty**

First, Ingram reports that he submitted a petition to plead guilty to his counsel, but counsel failed to file it. He asserts that he "wanted to plead guilty, he signed a guilty plea, but counsel

---

[1] Ingram prefaces his Motion by asserting that he is "seeking liberation" from "a court that refuses to identify with (or empathize) the root causes of crime in Black America and a court that is so far removed from the Plight of Black Americans, that it is ill equipped to understand that by taking "multiple decades" out of petitioners life no rehabilitation will be attained but the cycle of Fatherless black child will be perpetuated." (Dkt. 9 at 1). This assertion is false. The Court is able to identify with the roots of crime in Black America and is well aware of the plight of Black Americans as it relates both the accused and victims of violent crime. Ingrams crimes nor his sentence had anything to do with his race. As required, in determining the sentence, the Court considered the factors in 18 U.S.C. §3553(a) and imposed a sentence that would protect society, allow Ingram to receive proper mental health treatment, anger control treatment to address his history of battery and domestic violence, receive treatment for his substance abuse issues, and participate in educational and vocational training so that he can be a productive citizen when he is released from prison. (Dkt. 176 at 55-56). The Court showed empathy in sentencing Ingram to a below guideline term of imprisonment.

acting in his own interest did not turn it in." (Dkt. 9 at 7.) The Sixth Amendment guarantees criminal defendants not only the right to the effective assistance of counsel, but also the "correlative right to representation that is free from conflicts of interest." *Burkhart v. United States*, 27 F.4th 1289, 1295 (7th Cir. 2022) (citing *Wood v. Georgia*, 450 U.S. 261, 271 (1981)). While Ingram asserts that his counsel had a conflict of interest, he does not identify that conflict. Any argument regarding a conflict is therefore waived. *See United States v. Cisneros*, 846 F.3d 972, 978 (7th Cir. 2017) ("[P]erfunctory and undeveloped arguments…are waived.") (internal quotations omitted).

Since Ingram has demonstrated no conflict, his argument may be addressed as a standard ineffective assistance of counsel claim. Ingram argues he told his counsel that he wanted to plead guilty and that he signed a guilty plea, but counsel did not file it. He argues that this resulted in him going to trial and forfeiting a three-point reduction in his sentencing guidelines calculation based on his acceptance of responsibility.

The Government argues that counsel did not perform deficiently in not submitting the petition to plead guilty. Instead, the Government contends the decision was strategic. *See United States v. Shukri*, 207 F.3d 412, 418 (7th Cir. 2000) ("The Court defers to counsel's 'reasonable judgment and declin[es] to second guess strategic choices.'") (quoting *United States v. Williams,* 106 F.3d 1362, 1367 (7th Cir. 1997). Counsel's trial strategy was discussed twice at Ingram's sentencing hearing. When arguing that the Court should award Ingram a two level deduction for acceptance of responsibility, Ingram's counsel stated:

> Your honor, my client did not enter a plea of guilty. However, he did authorize me to, in opening statement, admit that he was involved in the robberies and inform the jury that we were not contesting that. We were conceding his guilt on those robberies. And what the trial was about was whether or not he was guilty on Counts 5 through 8. And in doing so I think that we eliminated a great deal of work for the government.

5

(Dkt. 176 at 7). Ingram later informed the Court that he admitted guilt to the four robbery counts and "I definitely had signed a plea and sent it in. I don't know what happened to it." (Dkt. 176 at 35). Thereafter, counsel explained why he did not submit the plea:

> For the longest time, I had been advising Ingram to admit to the robberies and to sign a plea and to plead guilty to them, and he hesitated and balked at that. And I did send him a petition for Counts 1 through 4 to do that.
>
> And about maybe two or three days before the trial began,[2] I finally got the signed [petition] back, he finally decided to do it. And at that point, I felt like the benefit that I thought might come from being able to tell the jury, "Hey, he's pled guilty to Counts 1 through 4, let's just talk about 5 through 8," I thought that it was so late in the day, that it would be better to let the jury make those findings rather than have him plead guilty to those. So it was not turned in because I felt like, at that point, there was no advantage to doing it that way.

(Crim. Dkt. 176 at 35.)

The record supports counsel's conclusion that there was no advantage to submitting a last-minute petition to plead guilty. First, even, if Ingram had entered a last-minute open guilty plea, the Government still would have to show that he possessed a firearm "during and in relation to a crime of violence"—in this case the robberies. 18 U.S.C. § 924(c). Because those counts were linked to the robberies themselves, the Government was still required to present evidence of them. And, while admitting fault may have earned favor with the jury, counsel sought the same favor by explaining in his opening statement that " Mr. Ingram and I are not contesting Counts 1 through 4. Those are the robbery charges. We're not resisting the government's evidence on that, we're not contesting it." (Crim. Dkt. 171 at 43.) Further, counsel still argued at sentencing that Ingram was

---

[2] Ingram argues that his counsel "lied…where he stated 'and about two or three days before the trial began, I finally got the signed [petition] back." (Dkt. 9.) He asserts that "this can easily be rebutted by looking at the received fax date" and the fact that he was confined in Henderson, Kentucky when the fax was sent. *Id*. Ingram asserts that defendants are moved to the local county jail no later than two weeks before trial. Thus, he explains that because the fax was sent from the Henderson, Kentucky, it must have been sent at least two weeks before trial. But Ingram does not provide a copy of the fax or state the date upon which he sent the signed plea agreement to counsel. Further, whether Ingram sent the plea agreement to counsel more than a day or two before trial, it is undisputed that it was sent a very short time before trial.

6

entitled to a reduction based on his acceptance of responsibility for the robberies. (Crim. Dkt. 176 at 7.) The Government argued that Ingram did not deserve any credit for acceptance of responsibility.³ Because of the belated submission of Ingram's petition to plead guilty to some of the counts, and based on counsel's explanation that he saw "no advantage" to filing the plea, the Court concludes that counsel acted strategically, not deficiently, in declining to file it.

In addition, Ingram has not shown that he suffered any prejudice from the failure to file his plea agreement. Ingram contends that had counsel filed the petition to plead guilty, he would have received a three-point reduction for his acceptance of responsibility under Section 3E1.1 of the United States Sentencing Guidelines. (Dkt. 9 at 8.) But even if his last-minute plea had been submitted, that would not have guaranteed him a sentence reduction. *United States v. Chairs*, 360 F. App'x 668, 671 (7th Cir. 2010) ("A judge may determine that a reduction under § 3E1.1 is not warranted when a defendant waits until the eleventh hour to enter a plea."); *United States v. Francis*, 39 F.3d 803, 808 (7th Cir. 1994) (defendants were not entitled to reduction when plea was entered one week before trial); *United States v. Rosalez–Cortez*, 19 F.3d 1210, 1219 (7th Cir. 1994) (affirming denial of an acceptance-of-responsibility reduction for a defendant who pleaded guilty after a two-day bench trial). In addition, a last-minute guilty plea to just the robbery counts—and not the firearms counts—would not have alleviated the need for the Government and the Court to prepare for trial and therefore would likely not have supported a reduction for acceptance of responsibility. And there is no indication that the Government offered such a plea agreement to Ingram. Ingram therefore has failed to show that, even if it was error not to file his plea agreement, the result would have been different. *Perrone*, 889 F.3d at 908.

---

³ The Court was persuaded by the Governments argument and rejected Ingram's counsel's argument, finding that the Government still had to meet their burden of proof at trial, that Ingram had falsely denied that the firearm was a real firearm, and that Ingram had obstructed justice. (Crim. Dkt. 176. at 9.)

### C.     Competency

Next Ingram argues that his counsel performed deficiently by failing to request a competency hearing. "Due process prohibits the trial of a defendant who lacks mental competence." *Anderson v. United States*, 865 F.3d 914, 919 (7th Cir. 2017) (quoting *Drope v. Missouri*, 420 U.S. 162, 171-72 (1975)). A defendant is competent when he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *United States v. Woodard*, 744 F.3d 488, 493 (7th Cir. 2014) (cleaned up). A competency hearing is required only when there is a "bona fide doubt" that a defendant is competent. *Id*. "[T]here must be some manifestation, some conduct, on the defendant's part to trigger a reasonable doubt of his competency.... [T]he test is objective, and depends not on what the judge had in mind, but on the facts before him." *United States v. Collins,* 949 F.2d 921, 924 (7th Cir. 1991) (citation omitted).

In support of his Motion, Ingram states that he spoke to the Court and his counsel several times about not understanding the proceedings, and informed his attorney that his "competency level was very low" and described his mental health history in detail. (Dkt. 9 at 5.) He also states that he complained to the Court "that he could not understand nothing that was going on and he needed his lawyer to brake (sic) it down to him." *Id*. But the record reflects only one occasion when Ingram expressed misunderstanding about the proceedings. At sentencing, Ingram indicated that he did not understand that either his attorney or the clerk could file a notice of appeal for him. (Crim. Dkt. 176 at 60.) The Court inquired and asked counsel had he "previously experienced his client being lost and not understand things." *Id* at. 59. Counsel responded that this was the "first time" that Ingram had expressed confusion. *Id.* The Court then explained that distinction to him and Ingram indicated that he understood the rest of the proceedings. *See id.* at 60-62.

There is no other indication in the record that Ingram did not understand the proceedings or could not assist his attorney. Ingram's assertions that he did not understand and that his competency level was low are too vague to support a conclusion that he expressed confusion at any other time.

The presentence investigation report ("PSR") shows that Ingram was diagnosed with Attention Deficient Hyperactivity Disorder ("ADHD") during adolescence and prescribed Ritalin but then given a prescription for Concerta. (Crim. Dkt. 145 ¶ 101.) In addition, when he was 13 years old, he received a psychological evaluation and was determined to be "mildly mentally handicapped and behaviorally troubled which complicated his school adjustment." *Id.* Ingram collected social security benefits based on his "diagnoses of emotionally handicapped" and ADHD. *Id.* ¶ 89. He had difficulty reading and writing and partook in special education classes for all subjects. Id. ¶ 108. Nonetheless, despite Ingram's intellectual challenges, he received his GED and attended classes offered by Ivy Tech Community College when he was at Wabash Valley Correctional Facility. *Id.* ¶ 108. Ingram exhibited no signs of confusion or incompetence during court hearings, during his trial or in his allocution at the sentencing hearing.

Ingram's mental health history and intellectual challenges do not "mean that he [was] incompetent to stand trial." *Price v. Thurmer*, 637 F.3d 831, 833-34 (7th Cir. 2011). He need only be able to follow the proceedings and provide the information that his lawyer needs in order to conduct an adequate defense, and to participate in certain critical decisions, such as whether to appeal. *Id*. Ingram was clearly able to do so.

In sum, Ingram has not supported his claim that he was incompetent to stand trial and he has not shown that his counsel performed deficiently by failing to request a hearing or that his due process rights were violated.

**D.     Sentencing**

Ingram next contends that his counsel provided ineffective assistance during sentencing by failing to challenge his sentence under the First Step Act and by failing to challenge the application of criminal history points for previous misdemeanors.[4]

**1.     First Step Act**

Ingram was sentenced on March 1, 2019. He argues that his sentence is illegal under the First Step Act of 2018 and his counsel provided ineffective assistance by failing to challenge his sentence. Specifically, Ingram argues that, under the First Step Act, his charges for possession of a firearm during and in relation to a crime of violence under 18 U.S.C. § 924(c) were illegally "stacked".

Before the passage of the First Step Act, § 924(c) imposed mandatory minimum sentences for using or carrying a firearm in connection with a crime of violence, which included a 25-year mandatory minimum sentence for a "second or subsequent" conviction. A conviction was treated as "second or subsequent" even if the first § 924(c) conviction was obtained in the same case. *See United States v. Thacker*, 4 F.4th 569, 571 (7th Cir. 2021). This practice was known as "stacking". Under the First Step Act, the 25-year minimum applies only if the "second or subsequent" conviction occurs after the first conviction has become final. *Id.*

Ingram's sentence under § 924(c) was not a product the of the now-repealed 25-year minimum for second or subsequent offenses. Instead, each of his four § 924(c) convictions resulted in a mandatory minimum sentence of seven years of imprisonment, imposed

---

[4] In its response, the Government points out that Ingram may have been incorrectly found to be a "career offender" under the United States Sentencing Guidelines given recent Seventh Circuit precedent, *Bridges v. United States*, 991 F.3d 793 (7th Cir. 2021). The Government notes correctly that the record makes clear that no prejudice resulted as the Court rooted its sentence firmly in § 3553(a) and sentenced Ingram to a below-guidelines variance of 486 months, which was below Ingram's advisory Guidelines range even if he had not been a "career offender." (Dkt. 12 at 1.) But because Mr. Ingram did not raise this argument and did not file a reply in support of his Motion, the Court need not address this issue in detail. *See Cisneros*, 846 F.3d at 978.

consecutively, as required by the statute. *See* 18 U.S.C. §§ 924(c)(1)(A)(ii) & (D)(ii) (2019). So his four § 924(c) convictions resulted in a minimum of 28 years of imprisonment. (Crim. Dkt. 145 ¶¶ 55–56.) Because this was a proper application of the First Step Act, Ingram's counsel did not perform deficiently by failing to object.

    2.    **<u>Criminal History Points</u>**

Ingram also argues that he was incorrectly given criminal history points for misdemeanors and dismissed charges.

The United States Sentencing Guidelines provide for the following criminal history points:

> The total points from subsections (a) through (e) determine the criminal history category … :
>
> > (a) Add 3 points for each prior sentence of imprisonment exceeding one year and one month.
> >
> > (b) Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).
> >
> > (c) Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this subsection.

U.S.S.G. § 4A1.1. Ingram argues that he should not have received points for the misdemeanor offenses identified in paragraphs 69, 70, 71, and 72 of the PSR. (Dkt. 9 at 19 (citing Dkts. 1-10 and 1-11).)

First, Paragraph 69 of the PSR identified Ingram's February 5, 2013, misdemeanor convictions for refusal to identify and operating a vehicle having never received a license. (Crim. Dkt. 145 ¶ 69.) He was sentenced to 30 days in jail on each count, to be served concurrently. *Id*. One point was assigned to these convictions, consistent with § 4A1.1(c).

Second, one point was assigned for Ingram's January 2, 2018, misdemeanor conviction for possession of marijuana, for which he served 22 days in jail. (Crim. Dkt. 145 ¶ 70.) This was consistent with § 4A1.1(c).

Third, consistent with § 4A.1.1(b), two points were assigned for Ingram's December 20, 2016, misdemeanor conviction for carrying a handgun without a license for which he was sentenced to 120 days imprisonment with 60 days credit time. (Crim. Dkt. 145 ¶ 71.) No points were added for the "[a]dditional charges of Unlawful Possession of a Firearm by a Serious Violent Felon and Possession of Marijuana [which] were dismissed." *See id*.

Fourth, one point was assigned for Ingram's January 4, 2018, misdemeanor convictions for possession of a narcotic drug, dealing marijuana, and possession of marijuana. (Crim. Dkt. 145 ¶ 72.) Ingram was sentenced to eight days imprisonment imposed, "with 4 days credit time, on each count, concurrent." For these offenses, Ingram was correctly assigned one point under § 4A1.1(c).

In short, Ingram has pointed to no improper assignment of criminal history points. He therefore has failed to show that his counsel performed deficiently by failing to object to the application of his criminal history points.

## IV. CONCLUSION

The Court recognizes that the sentence imposed is lengthy, and encourages Ingram to continue his rehabilitative efforts as one day, this court--or perhaps another--may have an opportunity to reduce his sentence. But that day is not today. For the reasons explained in this Order, Petitioner Kevin Ingram is not entitled to relief on his § 2255 motion. There was no ineffective assistance of counsel. Accordingly, his Motion for relief pursuant to § 2255 is **DENIED** and this action is **dismissed with prejudice**. Judgment consistent with this Entry shall now issue and the **Clerk shall docket a copy of this Order in No. 1:18-cr-44-TWP-TAB-1.** The motion to vacate (Crim. Dkt. 202) shall also be **terminated** in the underlying criminal action.

## V. DENIAL OF CERTIFICATE OF APPEALABILITY

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, rather, he must first request a certificate of appealability. *See Miller–El v. Cockrell*, 537 U.S. 322, 335 (2003); *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014). Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 proceedings, and 28 U.S.C. § 2253(c), the Court finds that Ingram has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The Court therefore **DENIES** a certificate of appealability.

**SO ORDERED.**

Date: 2/16/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana


DISTRIBUTION:

Kevin Ingram, #16167-028
COLEMAN I U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. Box 1033
Coleman, Florida  33521

Nicholas J. Linder
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
nick.linder@usdoj.gov